NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| | : | |
| COMCAST CABLE COMMUNICATIONS LLC, | : | |
| | : | **OPINION** |
| Plaintiff, | : | |
| | : | Civil Action No. 06-3421 (WHW) |
| v. | : | |
| | : | |
| EUGENE VIRGILI, | : | |
| | : | |
| Defendant. | : | |
| | : | |

---

**Walls, Senior District Judge**

Plaintiff moves for entry of default judgment, pursuant to Fed. R. Civ. P. 55, against defendant Eugene Virgili ("defendant") for violating the Communications Act, 47 U.S.C. §553. Pursuant to Fed. R. Civ. P. 78, plaintiff's motion is decided without oral argument. The motion is granted.

### FACTS AND PROCEDURAL BACKGROUND

Plaintiff is the owner and operator of a cable television system. Subscribers to plaintiff's service purchase "basic" or "standard" packages of programming services, to which they may add premium programming services for additional monthly charges per service, ranging from approximately $7 to $13 per month per service.[1] In addition, plaintiff offers Pay-Per-View programming, which allows subscribers to purchase individual movies, sporting events, or other entertainment for a per event fee ranging from approximately $4.00 to $49.99 per event.

---

[1] The Court notes that Plaintiff's complaint, however, states that such services costs $13.99 to $16.99 per month per service. (Compl. at ¶9.)

**NOT FOR PUBLICATION**

Comcast prevents subscribers from receiving services they have not paid for by encoding or "scrambling" the signals for specific programming services.  Comcast provides subscribers with a decoder that enables the providers to watch the specific programming services for which they have paid.  Programs the subscriber has not purchased will remain scrambled and not viewable.

According to the complaint, on or about June 27, 2001, defendant purchased "pirate" cable television transmission decoding equipment from Wholesale Electronics. (Compl. at  ¶22.) Plaintiff characterizes this equipment as designed only for the purpose of circumventing the security functions of plaintiff's technology and descrambling all scrambled "premium" and "pay-per-view" cable programming services available on plaintiff's system without authorization or payment to plaintiff.  (Pl.'s Br. at 2).

Plaintiff filed the complaint in this matter on July 26, 2006 and defendant was personally served on August 4, 2006.  Defendant did not answer or otherwise respond to the complaint.  On September 14, 2006, at plaintiff's request, the Clerk entered default against defendant.  By this motion, plaintiff requests entry of judgment pursuant to 47 U.S.C. § 553.  Specifically, plaintiff requests statutory damages of $10,000, attorneys fees in the amount of $2,242.50, costs of $428.87, and pre-judgment interest of $41.80, all totaling $12,713.17.  Additionally, plaintiff requests that defendant be enjoined from further violation of §553.

**LEGAL STANDARD**

**Standard for Default Judgment**

-2-

NOT FOR PUBLICATION

Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading.  Anchorage Assoc. v. Virgin Is. Bd. of Tax. Rev., 922 F.2d 168, 177 n. 9 (3d Cir. 1990) ("When a defendant fails to appear. . . the district court of its clerk is authorized to enter a default judgment based solely on the fact that the default has occurred.").  The entry of default judgment is a matter left to the sound discretion of the trial court.  See Harad v. Aetna Cas. & Sur. Co., 839 F.2d 979, 982 (3d Cir. 1988).  However, the Third Circuit has repeatedly stated its strong preference that cases be disposed of on the merits and required that district courts determine whether any sanction short of a default judgment would be effective.  See Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984).

In considering a motion for default judgment, the Court should accept as true the factual allegations of the complaint except those allegations concerning the amount of damages.  Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990);  Comcast Cable Comm. v. Weigel, No. 05-2016, 2006 WL 2460652, at *2 (D.N.J. Aug. 22, 2006).   But, "the court need not accept the moving party's legal conclusions because" even after default it "remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."  Directv Inc. v. Asher, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. March 14, 2006) (quoting 10A Charles A. Wright, et al., Federal Practice & Procedure § 2688 (3d ed. 1998)).

**Communications Act –  47 U.S.C. § 553**

NOT FOR PUBLICATION

Plaintiff alleges that defendant violated 47 U.S.C. § 553, which prohibits unauthorized reception of cable service.  Specifically, subsection (a)(1) of the statute provides that "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."  Under subsections (c)(2)(a) and (c)(3)(a), where the Court finds a violation of subsection (a)(1), it may grant an injunction and may award statutory damages of not less than $250 or more than $10,000 as the court considers just.

### DISCUSSION

**Liability**

Defendant failed to respond to the complaint and has not appeared to show any reason why judgment should not be entered.  Plaintiff asserts that defendant purchased a device designed to descramble encrypted programming and which has no legitimate function or purpose. (Pl.'s Br. at 2.)  Plaintiff also states that defendant was a subscriber to plaintiff's service from before the time he purchased the device until at least the filing of the complaint.  (Compl. at ¶22).  Accordingly, plaintiff infers that defendant has used such device since the summer of 2001 to receive unauthorized communications services, thereby violating  47 U.S.C. §553(a)(1). Accepting plaintiff's factual allegations, the Court finds that defendant violated  47 U.S.C. §553(a)(1).  See Comdyne I, 908 F.2d at 1149;  In re Victor Int'l, Inc., 278 B.R. 67, 82 (Bankr. D.N.J. 2002) (upon entry of default, moving party is entitled to all reasonable inferences from the evidence offered).

**Damages**

NOT FOR PUBLICATION

Plaintiff argues that it is difficult to determine actual damages incurred by defendant's use and urges the Court to award statutory maximum of $10,000.  In justifying the magnitude of this award, plaintiff argues that defendant's behavior constituted a willful violation of the Act, urges the Court to consider the seven years useful life of the descrambling device, and calculates that by pirating all premium channels and pay-per-view programs, the defendant could receive over $5,000 per month in unauthorized programming.  (Pl.'s Br. at 7).  The Court accepts plaintiff's argument that it is difficult to ascertain actual damages under these facts.  Moreover, by failing to appear, defendant has assured that any estimate of actual damages would be arbitrary.  Weigel, 2006 WL 2460652, at *5.  For these reasons, statutory damages are appropriate.

 In considering whether to impose the statutory maximum, the Court notes that defendant was in possession of the device for over five years when the complaint was filed.  While the Court will not consider the full seven years useful life of the descrambling device because defendant has not been in possession of the device for seven years, five years is a substantial period of time.  Plaintiff's $5,000 a month figure is less than helpful;  as other courts have noted, "[t]hose who steal cable television presumably must sleep, eat, bathe, go to work shop, and otherwise go about their daily lives."  See, e.g. Id. at *4.

Nonetheless, given the length of time defendant has been in possession of the device, $10,000 is a just award.  Dividing this figure over the approximately sixty months between defendant's purchase of the device and the date plaintiff filed this complaint, this award equals $167 per month.  It is entirely plausible defendant may have consumed services totaling or exceeding this amount per month, given the costs for plaintiff's premium and Pay-Per-View

NOT FOR PUBLICATION

services. See Id. at 3 ("[t]o calculate a 'just' award of statutory damages, most courts consider

the value of the services to which the defendant had unauthorized access"); Comcast Cable

Comm. v. Cabrera, No. 04-3431, 2005 WL 3544698, at *2 (D.N.J. Dec. 28, 2005).  Additionally,

the Court finds pre-judgment interest is appropriate, an awards plaintiff the $41.80 in

prejudgment interest requested.  See Cabrera, 2005 WL 3544698, at *2.

**Costs & Fees**

The Communications Act authorizes the Court to award full costs, including reasonable

attorney's fees. 47 U.S.C. §553(2)(c).  Plaintiff submitted a certification by counsel, Francis X.

Riley III, setting forth the costs and attorneys' fees incurred in litigating this case.  The Court

finds the costs identified – $350 in filing fees and $78.87 for process service fees and other costs

– to be reasonable.  To calculate attorneys fees, the Court multiplies the "number of hours

reasonably expended on the litigation" by a "reasonable hourly rate."  Hensley v. Eckerhart, 461

U.S. 424, 433 (1983).  Plaintiff identifies four time-keepers, billing a total of 13.5 hours.  (Am.

Cert. of Francis X. Riley, III at 3).  Multiplying each time-keeper's time by billing rate, plaintiff

calculates total fees of $2,242.50.  A review of the itemized bill, which identifies the tasks

completed by each time-keeper, indicates that the hours logged are not "excessive, redundant, or

otherwise unnecessary."  Hensley, 461 U.S. at 434.  The Court will award plaintiff $2,242.50 in

attorneys' fees.

**Injunction**

Under §553(c)(2)(a) of the Communications Act, the court may grant a final injunction

on such terms as it may deem reasonable to prevent or restrain violations of subsection (a)(1).  In

NOT FOR PUBLICATION

deciding whether to issue a permanent injunction, a plaintiff must demonstrate: (1) that it has

suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are

inadequate to compensate for that injury; (3) that, in considering the balance of hardships

between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public

interest would not be disserved by a permanent injunction.  Ebay Inc. v. Mercexchange, LLC,

126 S.Ct. 1837, 1839 (2006);  Zen Investments, LLC v. Unbreakable Lock Co., No. 06-1112,

2006 WL 1582333, at *3 (E.D.Pa. June 2, 2006) (Supreme Court's Ebay decision answered

unsettled question in the Third Circuit as to whether "irreparable harm" is a necessary showing

for a permanent injunction).[2]

Taking those factors in reverse order, it is clear that entry of an order enjoining defendant

from further illegal use of the decoder would not harm the public interest.  As to balancing the

hardships, under the facts alleged and accepted by this Court, defendant has clearly violated 47

U.S.C. § 553.  Such conduct results in a substantial loss of revenue for plaintiff.  The only benefit

to defendant is the consumption of unauthorized cable programming.  Accordingly, the balance

of hardships tips strongly in favor of plaintiff.

Finally, with respect to the first and second factors above, the Court finds that the nature

of defendant's conduct suggests both that a remedy at law would be inadequate and that plaintiff

is at significant risk of suffering irreparable harm.  From plaintiff's submissions, it appears that

---

[2]Prior to Ebay, numerous courts in this Circuit considering Communications Act
violations have noted that where authority for an injunction is provided by a statute – as in the
Communications Act – courts may issue an injunction without considering the traditional
equitable factors.  In light of Ebay, it is not clear that district courts may dispense with the four-
factor test so easily.

**NOT FOR PUBLICATION**

plaintiff only learned of defendant's violation of 47 U.S.C. §553 by discovering that defendant

purchased an illegal device.  Given the difficulty in detecting and measuring any future use of

this device to unlawfully access more programming, plaintiff has a legitimate and compelling

concern that defendant will continue to violate the statute.  Moreover, there exists a significant

risk that defendant may continue to do so without repercussion, quite literally causing plaintiff

irreparable injury.  By enjoining defendant from any further use of the illegal device he

purchased from Wholesale Electronics, this Court will at least reduce the likelihood that

defendant will continue to use the device because any such use would be in direct violation of a

court order.

### CONCLUSION

   For the foregoing reasons, the Court will enter default judgment against defendant in the

amount of $10,000, will award plaintiff $2,242.50 in attorney's fees, $428.87 in costs, and

$41.80 in prejudgment interest, for a sum total of $12,713.17.  The Court will also enjoin the

defendant from committing or assisting in the commission of any further violations of

§553(a)(1).


                                                        **s/William H. Walls**
                                                        United States Senior District Judge


**Appearances**
Attorney for Plaintiff:
Francis X. Riley, III
Saul Ewing LLP

**NOT FOR PUBLICATION**